UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
FIERMAN PRODUCE EXCHANGE INC.,

                Plaintiff,

  -against-

WATERMELONS PLUS, INC., WATERMELONS II,
INC. and DANNY PAGANO,

                Defendants.

Case No.: 07CV2927 (Ro)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION PURSUANT TO F.R.CIV.P.65

### PRELIMINARY STATEMENT

The plaintiff submits this Memorandum of Law in support of its application for a temporary restraining order pursuant to F.R.Civ.P. Rule 65. Submitted herewith in support of plaintiff's application is the affidavit of WILLIAM FIERMAN, sworn to on the 2nd day of April, 2007, with exhibits annexed thereto.

### THE PARTIES

The plaintiff is a New York corporations with its principal places of business at the New York City Terminal Market, Hunts Point, Bronx, New York. It engages in the sale of perishable agricultural commodities. The defendant, WATERMELONS PLUS, INC. ("WATERMELONS PLUS"), is a New York corporation doing business at 99 Brooklyn Terminal Market, Brooklyn, New York 11236 ("Plus Premises"), in the State of New York and in this judicial district. The defendant, WATERMELONS II, INC. ("WATERMELONS II"), is a New York corporation doing business at 97 Brooklyn Terminal Market, Brooklyn, New York 11236 ("II Premises"), in the State of New York and in this judicial district. The

defendant, DANNY PAGANO ("PAGANO") is the principal officer, director and shareholder of each corporation. There was a commonality of ownership in PAGANO with each corporation and each corporation is an affiliate of each other. Each corporation purchased perishable agricultural commodities from the plaintiff at its place of business in the County of Bronx, City and State of New York.

## FACTUAL BACKGROUND

From December 2, 2005, through December 21, 2005, the defendant WATERMELONS PLUS ordered perishable agricultural commodities from the plaintiff, in the sum of FIFTY-FOUR THOUSAND SIX HUNDRED SIXTY-FIVE AND 87/100 ($54,665.87) DOLLARS, which, to date, has not been paid. The dissipation of this sum as well as inventory and accounts receivable, without payment therefor to the plaintiff, would be a violation of the obligations of the defendants as statutory trustees under PACA. In such event, the rights of the plaintiff would be irreparably damaged should this Court not grant this request for relief to the extent of restraining the transfer of assets of the defendants until a hearing can be had upon the merits of this application.

From September 12, 2006, through March 15, 2007, the defendant WATERMELONS II ordered perishable agricultural commodities from the plaintiff, in the sum of THIRTY-FIVE THOUSAND THREE HUNDRED EIGHTY-ONE AND 00/100 ($35,381.00) DOLLARS, which, to date, has not been paid. The dissipation of this sum as well as inventory and accounts receivable, without payment therefor to the plaintiff, would be a violation of the obligations of the defendants as statutory trustees under PACA. In such event, the rights of the plaintiff would be irreparably damaged should this Court not grant this request for relief to the extent of restraining the transfer of assets of the

defendants until a hearing can be had upon the merits of this application.

## NATURE OF THE PROCEEDINGS

The plaintiff seeks specific enforcement under the 1984 amendment to the Perishable Agricultural Commodities Act, 7 U.S.C. §499(e)(c) ("PACA"), and the regulations issued pursuant thereto, 7 C.F.R. Part 46, 49, F. Reg. 45735 (Nov. 20, 1984) (the "PACA regulations").

The Court's jurisdiction is invoked pursuant to 7 U.S.C. §499e(c)(4).

## THE PERISHABLE AGRICULTURAL COMMODITIES ACT

As first enacted in 1930, the PACA was designed to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce" and "provides a code of fair play... and aid to (agricultural) traders in enforcing its contracts." 49 Fed. Reg. at 45737. The 1984 amendment to the PACA imposes a statutory trust on agricultural commodities and the inventories of food or other products derived therefrom, as well as any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers and brokers and for which payment has not been made. By its terms, the purpose of the trust is to assure that suppliers of produce do not go unpaid because the receiver of the produce uses the produce to pay prior debts. The words of the statute are clear:

> "(c)(1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended

3

to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

The trust must be maintained for the benefit of the unpaid suppliers, sellers or agents who provided such commodities until full payment of the sums owing for the commodities has been received by them. 7 U.S.C. §449e(c)(2). The trust provision thus offers suppliers and sellers of fruits and vegetables "a self-help tool that will enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." 49 Fed. Reg. at 45737. When such goods are not paid for promptly, suppliers, sellers or agents may preserve its entitlement to trust assets by filing a written notice with the debtor and the Secretary of the United States Department of Agriculture (the "Secretary"). 7 U.S.C. §499e(c)(3). Any failure to maintain the trust imposed by PACA or to account truly and correctly and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. §499b(4). The PACA regulations make clear that "[it is the buyer's or receiver's responsibility as trustee to insure that is has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment..." 49 Fed. Reg. at 45738. Further, the regulations provide that "[if a buyer or receiver declares bankruptcy . . . trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid." *Id.* Agricultural merchants, dealers and brokers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities," and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 U.S.C. §46.46e(l).

4

**A PRELIMINARY DECREE SHOULD BE ENTERED DIRECT[ING] WATERMELONS PLUS AND WATERMELONS II TO COMPLY [WITH] THE PACA AND ENJOINING IT FROM TAKING ANY MEASU[RE] INCONSISTENT WITH ITS OBLIGATIONS UNDER THE PAC[A]**

The standard for granting a preliminary injunction in the Second Circ[uit requires a] showing of (a) possible irreparable harm and (b) either (1) likelihood of suc[cess on the] merits or (2) sufficiently serious questions going to the merits to make them a [fair ground] for litigation and a balance of hardships tipping decidedly toward the party req[uesting] preliminary relief. *OMW Intern v. Chase Manhattan Bank N.A.*, 606 F.2d 10 (2d [Cir. 1979);] *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979); *C[aulfield v.] Board of Education*, 583 F.2d 605 (2d Cir. 1978). The instant claim for relief me[ets both] of these tests, and accordingly, should be granted in all respects. An excellent ex[ample] of the statute and its effect in bankruptcy proceedings is found in the case of *In r[e Fresh] Approach, Inc*, 51 B.R. 412 (N.D.Texas). A reading of that case should convince thi[s Court] of the merits of this lawsuit and the pending application.

1.   **The Plaintiff would be irreparably injured were the Defendants [not] ordered immediately to comply with PACA.**

In the absence of injunctive relief, the PACA trust assets received and of which [the] plaintiff is the beneficiary, will be used by WATERMELONS PLUS to satisfy other de[bts] or otherwise dissipated. The moving affidavit of William Fierman clearly supports t[he] contention of the plaintiff that the defendant WATERMELONS PLUS is violating i[ts] obligation of the PACA.

In the absence of injunctive relief, the PACA trust assets received and of which the [p]laintiff is the beneficiary, will be used by WATERMELONS II to satisfy other debts or [ot]herwise dissipated. The moving affidavit of William Fierman clearly supports the

5

contention of the plaintiff that the defendant WATERMELONS II is violating its obligation of the PACA.

**2.    The Plaintiff Is a trust beneficiary entitled to enforce the PACA trust.**

The Plaintiff's entitlement to the relief requested which is to enforce the trust provisions of PACA and the PACA regulations and thus secure its claim for FIFTY-FOUR THOUSAND SIX HUNDRED SIXTY-FIVE and 87/100 ($54,665.87) DOLLARS against WATERMELONS PLUS is beyond question. It is indisputable (I) that the Plaintiff is a commission merchants and dealers as those terms are used in PACA, (ii) that the Plaintiff is a suppliers or sellers of perishable agricultural commodities, (iii) that, from December 2, 2005, through December 21, 2005, they sold to the defendants perishable agricultural commodities, the balance of which is FIFTY-FOUR THOUSAND SIX HUNDRED SIXTY-FIVE and 87/100 ($54,665.87) DOLLARS, which is past due and unpaid, (iv) that the Plaintiff timely preserved its rights under PACA as to this amount. Accordingly, as a PACA trust beneficiary who has done all that is necessary to perfect its rights under PACA, the Plaintiff is entitled to the establishment of the trust against WATERMELONS PLUS.

The Plaintiff's entitlement to the relief requested which is to enforce the trust provisions of PACA and the PACA regulations and thus secure its claim for THIRTY-FIVE THOUSAND THREE HUNDRED EIGHTY-ONE and 00/100 ($35,381.00) DOLLARS against WATERMELONS II is beyond question. It is indisputable (I) that the Plaintiff is a commission merchants and dealers as those terms are used in PACA, (ii) that the Plaintiff is a suppliers or sellers of perishable agricultural commodities, (iii) that, from September 12, 2006, through March 15, 2007, they sold to the defendants perishable agricultural commodities, the balance of which is THIRTY-FIVE THOUSAND THREE HUNDRED

EIGHTY-ONE and 00/100 ($35,381.00) DOLLARS, which is past due and unpaid, (iv) that the Plaintiff timely preserved its rights under PACA as to this amount. Accordingly, as a PACA trust beneficiary who has done all that is necessary to perfect its rights under PACA, the Plaintiff is entitled to the establishment of the trust against WATERMELONS II.

The instant application seeks an order directing WATERMELONS PLUS, WATERMELONS II and PAGANO to comply with PACA and enjoin them from taking any actions inconsistent with the duty of trust maintenance imposed upon it by PACA. It is designed to afford the plaintiff only that which is necessary, in the way of preliminary judicial relief because the plaintiff is entitled to enforce the trust.

It is the contention of the plaintiff that, upon information and belief, WATERMELONS PLUS and WATERMELONS II are not paying for produce which they has purchased and it must come into Court to show its readiness and ability to pay for the produce which it purchased from December 2, 2005 through December 21, 2005 and September 12, 2006 through March 15, 2007, respectively.

The moving affidavit of William Fierman, supports the plaintiff's contention that the defendants, WATERMELONS PLUS and WATERMELONS II, are violating its obligations under PACA and is dissipating its accounts receivable instead of preserving them as part of the trust res contemplated by PACA. This motion is designed to enjoin them from doing so and to frame such relief as to preserve and enforce the rights of the plaintiff under PACA.

All of this evidence indicates that the defendants are in severe financial jeopardy and the PACA trust assets are being threatened with dissipation. *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990).

The giving of notice will only provide defendants with advance warning that an order may be entered, thereby giving time to defendants to further dissipate trust assets by paying personal liabilities or non-trust creditors prior to the entry of the order. Thus, a further loss of trust assets would result if notice is given. Since it is all but impossible to recover trust assets once there has been dissipation, H.R. Rep. No. 543, 98th Cong., 2d Sess. 4 (1983), reprinted in 1984 US. Code Congo & Admin. News, 405, 411, *J.R. Brooks & Son, Inc. v. Norman's Country Market Inc.*, 98 B.R. 47, 50 (Bkrtcy. N.D. Fla. 1989), the loss to Plaintiff and other trust creditors would be irreparable. *Continental Fruit v. Thomas T. Gatziolis & Co.*, 774 F.Supp. 449 (N.D. Ill. 1991); *Gullo Produce Co., Inc. v. Jordan Produce Co., Inc*, 751 F.Supp. 64 (W.D. Pa. 1990). Furthermore, a prompt hearing will be held on plaintiff's motion for preliminary injunction, and defendants can file an immediate application to dissolve the temporary restraining order under Rule 65(b).

Case law supports plaintiff's entitlement to an immediate injunction requiring non-dissipation of trust assets when the produce supplier is not paid. *Frio Ice, S.A.*, 918 F.2d at 159; ("Upon a showing that the trust is being dissipated or threatened with dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets."); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364, 367 (Bkrtcy. N.D. Cal. 1990).

There are also a number of unreported cases from the Second Circuit supporting the issuance of temporary restraining orders without notice to halt dissipation of trust assets. *Freitas Bros. et al v. Seven Seas Trading Co., Inc. d/b/a Valley View Farms,*

(S.D.N.Y. Case No. 02:CIV-1778-Judge Daniels); *Edward Silva, Jr. d/b/a Silva Farms, et al v. Tucci & Sons Produce, Inc.*, (S.D.N.Y. Case. No. 00:CIV-3918 Judge Cote); *East Coast Brokers & Packers, Inc. v. Hunts Point Tomato Co., Inc. et al*, (S.D.N.Y. Case No. 00:CIV-2420-Judge Scheindlin); and *Nobles-Collier, Inc. et al v. Hunts Point Tomato Co., Inc.*, (S.D.N.Y. Case No. 02:CIV-4128-Judge McKenna).

In cases interpreting the rights of PACA creditors, courts in other jurisdictions have recognized that without injunctive relief, Plaintiff faced with an insolvent debtor will not receive either the trust assets or the proceeds of such assets. *See, Gullo Produce Co.*, 751 F.Supp. at 67. This has been found to constitute irreparable harm. *Id.; See also, Frio Ice*, 918 F.2d at 159 ("[t]he legislative history [of the PACA] noted that once the trust is dissipated it is almost impossible for the beneficiary to obtain recovery"). A moving party need only show actual dissipation <u>or</u> the threat of dissipation of the PACA trust in order to obtain injunctive relief and a segregation of the trust proceeds. *Frio Ice,* 918 F.2d at 159, n.8.

In the instant case, injunctive relief will force Defendants to cease dissipation of the PACA trust, prevent non-trust creditors from obtaining trust assets ahead of the trust's beneficiaries as well as other produce creditors not entitled to remedies under PACA, and require Defendants to return the trust to a fully-funded level sufficient to satisfy the claims of qualified beneficial interests in full. In short, it will force Defendants to comply with the law. Because it is virtually impossible to recover trust assets once they have been dissipated, the loss to Plaintiff and other trust creditors is irreparable.

The Defendants cannot be harmed by the issuance of an injunction because the

relief Plaintiff seeks is merely to force the Defendants to comply with its pre-existing obligations under federal law - that is, to preserve the PACA trust assets for the benefit of PACA beneficiaries and make "full payment promptly" on all produce related invoices. On the other hand, the risk of harm to Plaintiff is great if Defendants are allowed to further dissipate trust assets. As stated above, numerous courts have recognized the fact that once the PACA trust assets are dissipated, unpaid trust claimants in Plaintiff's position are extremely unlikely to recover any portion of its beneficial interest in the trust, a result at odds with the express purpose of the statute.

The strong preference for PACA trust creditors, which Congress expressed in the 1984 trust amendments to the PACA, clearly demonstrates the public interest at stake in this case. These safeguards were established in order to assure payment to the producers of perishable agricultural products. There can scarcely be a more vital public concern than the economic security of this nation's food supply. This supply and distribution chain consists of the very same growers, producers and distributors, which Congress sought to protect by enacting this legislation. To deny Plaintiff the requested relief would be to erode the protection Congress guaranteed these parties by passing the PACA and the regulations promulgated thereunder. Therefore, the requested injunction is clearly in the public interest.

The instant claim for relief meets each of these tests, and accordingly, should be granted in all respects.

Case law supports Plaintiff's entitlement to an immediate injunction requiring non dissipation of trust assets when the produce supplier is not paid. *Frio Ice. S.A. v. Sunfruit, Inc.*, supra, p. 159; ("Upon a showing that the trust is being dissipated or threatened with

dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets."); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364,367 (Bkrtcy. N.D. Cal. 1990).

Furthermore, once a PACA trustee is out of trust (indebted to any PACA trust claimant), then until payment is made, it remains out of trust from that point on. In other words, all trust claimants must be paid by a defaulting PACA dealer, or, he is in prima facie default under the statute, *In Re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1995).

See also, *E. Armata, Inc., et al. v. Platinum Funding Corp. and Ron Andrews of L.I., Inc. d/b/a F. Wilson Smith,* 887 F.Supp 590 (S.D.N.Y. 1995); *A & J Produce Corp. v. CIT/Factoring, Inc.*, 829 F. Supp 651 (S.D.N.Y. 1993), aff'd, *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063 (2d. Cir. 1995).

As the Kornblum Court stated, at the end of its decision:

"In any event, we agree with the reading of Section 499(e)(c)2 that is provided by §46.46. We accordingly accept the Creditors' argument that a single PACA trust exists for the benefit of all of the sellers to a Produce Debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full. It was therefor inappropriate to enter summary judgment against the Creditors on the basis that Kornblum had acquired the Units prior to its transactions with the Creditors, and the case must be remanded."

Based upon the order which was signed by United States District Court Judge Buchwald in *Post & Taback, Inc. v. Fruit Operating Co. Inc. d/b/a Carnival Fruit and Vegetable Market*, Case No. 98 CIV 461, in another case involving the application of the PACA, it is respectfully submitted that the relief requested herein is appropriate and should be granted.

Finally, Judge Keenan of this Court in *Point Produce, Inc. v. Mount Vernon Grocery Corp. and Adela F. Lores*, 1992 WL170680 (S.D.N.Y.) stated that there is a showing of an irrevocable harm when a defendant cannot pay creditors under the PACA. In that case there were checks which were made and returned for insufficient funds much as in the case of bar. Judge Keenan's decision is apposite to the facts in the case sub judice.

The individual liability of the defendant, PAGANO, is set forth in *Morris Okun, Inc. and Finest Fruits, Inc. v. Harry Zimmerman, Inc. and Harry Zimmerman, individually*, decided by Judge Sand of this Court on February 22, 1993 and reported at 814 F. Supp. 349. The Court decided that the individual defendant was liable "secondarily for whatever short fall may exist" in the payment from the corporation to the PACA beneficiary.

## CONCLUSION

For the foregoing reasons, the plaintiff respectfully submits that its application for a temporary restraining order and a preliminary injunction should be granted in all respects.

Dated: Westbury, New York
April 5, 2007

                Yours, etc.

                KREINCES & ROSENBERG, P.C.

        BY: _____
                LEONARD KREINCES (LK/6524)
                Attorneys for Plaintiff
                900 Merchants Concourse, Suite 305
                Westbury, New York 11590
                (516) 227-6500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
FIERMAN PRODUCE EXCHANGE, INC.,

      Plaintiff,    Case No.: 07-CV-2927 (RO)

 -against-

WATERMELONS PLUS, INC., WATERMELONS II, **AFFIDAVIT OF SERVICE**
INC. and DANNY PAGANO,

      Defendants.
_____

STATE OF NEW YORK )
COUNTY OF NASSAU )ss.:

 I, YVONNE LOPEZ, being duly sworn, say: I am not a party to this action, am over 18 years of age and reside at Queens Village, New York.

 On April 12, 2007, I served the within order to show cause by depositing a copy thereof enclosed in a Federal Express overnight delivery envelope in an official depository under the exclusive care and custody of the Federal Express within New York State, addressed to each of the following persons at the last known address set forth after each name:

WATERMELONS PLUS, INC.   WATERMELONS II, INC.
99 Brooklyn Terminal Market   97 Brooklyn Terminal Market
Brooklyn, New York 11236   Brooklyn, New York 11236

DANNY PAGANO
WATERMELONS PLUS, INC.
99 Brooklyn Terminal Market
Brooklyn, New York 11236

             _____
             YVONNE LOPEZ

Sworn to before me this
12th day of April, 2007

_____
Notary Public

LEONARD KREINCES
Notary Public, State of New York
No. 02KR7364365
Qualified in Nassau County
Commission Expires 1/31/2011